**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Big Stone Gap Division)**

MELINDA SCOTT,
Plaintiff,

v.

WISE COUNTY DEPARTMENT OF SOCIAL SERVICES, *et al.*,

Defendants.

**Case No. 2:20-cv-00014-JPJ-PMS**

**JOSHUA MOON'S**
**MEMORANDUM IN SUPPORT**
**OF MOTION FOR ATTORNEY'S FEES AND COSTS**

NOW COMES Joshua Moon, by counsel, and submits this Memorandum in Support of his Motion seeking to recover his attorney's fees and costs pursuant to Fed. R. Civ. P. 54 (d).

## I. Introduction

In this suit, the Plaintiff sought legal recompense for her own "anger and rage" at Mr. Moon. While Ms. Scott's anger is indeed palpable, a cause of action has eluded her in this and all her previous suits against him.

This Memorandum will detail the Plaintiff's legal history, with a focus on Ms. Scott's years-long crusade of litigation against Mr. Moon.[1] From the Wise County General District Court to the U.S. Supreme Court (and every state and federal court in between), Ms. Scott has pleaded her

[1] Mr. Moon states, on information and belief and subject to supplementation of the record as contemplated by the minute order found at Dkt. No. 86, that Ms. Scott has engaged in similar bad faith behavior directed towards other individuals. While Mr. Moon believes the pattern of Ms. Scott's conduct, including towards others, is relevant, Mr. Moon does not yet have the documentation in hand to definitively prove what he believes is Ms. Scott's history of sanctions and at least one unpaid judgment arising therefrom.

cases against Mr. Moon to some of the wisest jurists in this Commonwealth and this Nation. Yet she has been defeated at every turn in her quest to have material regarding her removed from the internet. And whatever merits Ms. Scott may have believed her claims had when she first started filing them, her actions in the years that have followed have made clear that Ms. Scott will not accept the rulings against her and is determined to wage a war of attrition that will bankrupt her opponents.

This Memorandum will also detail the Plaintiff's pattern of abuse of members of the legal community and of the legal system itself, and will illustrate based on Ms. Scott's out-of-court behavior that her in-court statements regarding her status as a victim of emotional distress strain credulity.

Mr. Moon now asks this Court not only to award costs pursuant to Fed. R. Civ. P. 54 (d), but also to find that he is entitled to fee-shifting under the Bad Faith Exception to the American Rule. He asks this Court not for a windfall, but to make him whole for the costs he has been forced to bear by a Plaintiff who has brought the same claims against him over, and over, and over again. Mr. Moon asks this Court to make clear to the Plaintiff that enough, at long last, is enough.

In support of his Motion, Mr. Moon has submitted his own declaration, a declaration of his counsel, and various accompanying exhibits. Undersigned counsel is mindful that this Court has declined to further extend the deadline for this Motion, but makes the following representations and requests leave to supplement this Motion and Memorandum as additional information becomes available to him:

1) As set forth in the filing at ECF No. 85, undersigned counsel has requested records from the General District Court of Buchanan County which undersigned counsel believes will

illustrate the pattern of the Plaintiff's behavior. Undersigned counsel has diligently contacted various trusted sources in the legal community with knowledge of the records while awaiting copies thereof, and is given to understand that the records in question will starkly illustrate that Ms. Scott's narrative of her various claims in this and other courts (including the narrative she recently deployed in seeking sanctions against undersigned counsel) is untrue.

2) The Plaintiff has continued, including as of the date of this filing, to post new content on www.KiwiFarms.net (hereinafter "Kiwi Farms"). Should additional content become available to counsel which will support this Motion, counsel will request leave to bring such content before the Court.

## II.      Factual Background: Plaintiff's Litigation History

This case began with a Complaint filed by Ms. Scott, in which she alleged that she is filled with "anger and rage" at Mr. Moon. Mr. Moon agrees. The Plaintiff's rage is reminiscent of Greek myths of Lyssa and her Maniae. Anger and rage might make for a wonderful Greek drama or tragedy, but they make a very poor basis for a lawsuit.

Before Mr. Moon can address the facts of this *Scott v. Moon* case, however, it is incumbent upon him to discuss again the facts of all the previous *Scott v. Moon* cases. This sad anthology is necessary not only because this Court has noted that Ms. Scott seems to recycle the same claims over and over again. It is also necessary because the Plaintiff herself has attempted to "settle" this case by blackmailing Mr. Moon into giving her the relief that this Court and others have denied her in previous cases.

In a previous brief, Mr. Moon incorrectly stated that this was Ms. Scott's *fifth* lawsuit against him. Dkt. No. 55. Further research has revealed that it is actually her *sixth* suit against Mr. Moon,

in addition to dozens of suits against other individuals and entities in state and federal court. Ms. Scott's suits have all been dismissed.

**a) Ms. Scott's lawsuits in state court**

Ms. Scott's lawfare against Mr. Moon began in the Wise County General District Court on April 7, 2017.[2] She filed a complaint against Mr. Moon in that Court, stating that Mr.Moon "has used the Computer to harass and intimidate the Plaintiff."[3] Her requested relief was for the Court to order "the Defendant to remove all internet content using her name, her business, her marital relations, and her locality on any Blog or Internet page permanently."[4] The General District Court's order, dated June 22, 2017 notes that the Court entered "Judgment for Defendant" and that the "Complaint was Dismissed."[5]

Ms. Scott noted her appeal to the Wise County Circuit Court that same day, and the entire case file was transferred to that Court.[6] Ms. Scott noted in an application to proceed *in forma pauperis* in the Circuit Court that she had only $6 to her name, but owned two late model vehicles.[7]

Virginia Circuit Judge Chadwick Dotson heard Ms. Scott's case on appeal. He issued a three-page order noting that Ms. Scott had not alleged facts to support any statutory cause of action, and that she had not alleged any actual injuries or harm from Mr. Moon's alleged actions.[8] The Circuit Court again dismissed the Plaintiff's Complaint.

---

[2] The full case file is found in the accompanying declaration of counsel as Exhibit C.
[3] *Id*. at p. 12.
[4] *Id*. at p. 13.
[5] *Id*. at p. 13, p. 15.
[6] *Id*. at p. 7.
[7] *Id*. at p. 18. A curious onlooker might wonder how an individual with only $6 cash on hand could possibly suffer monetary damages in the amounts Ms. Scott has consistently alleged she has suffered in this and other Courts.
[8] *Id*. at p. 21.

  **b) Ms. Scott sues the state and federal prosecutors, seeking to force a criminal prosecution**

On June 25, 2017, Ms. Scott filed a suit in this Court against the Wise County Commonwealth's Attorney and the United States Attorney, but also named Mr. Moon and/or Mr. Moon's former LLC as Defendant(s) (the record is not clear in what capacity Ms.Scott sued either Mr. Moon or the LLC). That case was captioned *Scott v. Wise Co. Commonwealth's Attorney et al.*, Case No. 2:17cv-23 (W. D. Va.).[9]

In this *Scott* case, the Plaintiff sought to force the extradition and prosecution of a former boyfriend named Andrew Carlson, but also sought "a restraining order against Lolwcow, LLC be filed to remove all online postings published by Joshua Moon that are aimed at harassing the Plaintiff as a victim of cyberstalking." Ms. Scott's second attempt to get content on Kiwi Farms removed from the internet was no more successful than her first attempt. This Court dismissed Ms. Scott's claims in their entirety.

**c) Subsequent suits in this Court**

Following the dismissal of her claims against Mr. Moon in state Court and the dismissal of her claims against Mr. Moon and various public servants in this Court, the Plaintiff recycled the same claims in at least three subsequent lawsuits.

The Plaintiff sued Mr. Moon in this Court on November 14, 2018. In that case, the Plaintiff filed a complaint in this Court captioned *Scott v. Carlson et al.*, Case No. 2:18-cv-00047-JPJ-PMS.[10] The docket reflects that Ms. Scott's claim in *Scott v. Carlson et al.*, Case No. 2:18-cv-00047-JPJ-PMS, was based upon alleged diversity jurisdiction, and that it was dismissed

---

[9] Rather than attaching the complete casefile in this case, Mr. Moon requests that this Court take judicial notice of its own records.

[10] Defendant Moon again requests that this Court take judicial notice of its own records.

on December 12, 2018. Although Ms. Scott never served the defendants in that matter because her complaint was dismissed by the Court before service could be undertaken, she alleged that Mr. Moon had violated her Fourth Amendment rights, defamed her, and insulted her intelligence. See *Scott v. Carlson et al*., Case No. 2:18-cv-00047-JPJ-PMS, Dkt. No. 2, p. 6 et seq. Once again, following the pattern of her two prior claims, the Plaintiff's claim for relief included a demand to have material mentioning her removed from the internet, and she also sought monetary damages from Mr. Moon and others for alleged emotional distress.

This Court's opinion dismissing *Scott v. Carlson et al*., Case No. 2:18-cv-00047-JPJ-PMS, noted that it was Ms. Scott's eighth *pro se* case in the past two years (as of 2018). See Dkt. No. 3, p.1, fn. 1. Ms. Scott appealed to the Fourth Circuit and to the U.S. Supreme Court, but both declined to grant her the relief she sought.

Undeterred, Ms. Scott proceeded to file yet another claim against Mr. Moon: *Scott v. Moon et al*., Case No. 2:19-cv-00005-JPJ-PMS. That suit, filed on December 28, 2018, again sought to invoke this Court's diversity jurisdiction. This time, Ms. Scott claimed in that Mr. Moon was committing the torts of "Invasion of Privacy: Appropriation," "Invasion of Privacy: Publication of Private Facts," "Defamation," and "Malice." She also claimed damages arising from "Emotional Distress due to Invasion of Privacy and Defamation." Dkt. No. 2, p. 4 *et seq*. Additionally, Ms. Scott sought "injunctive relief ordering both defendants to remove all online content which uses the Plaintiff's legal name, photos, portraits, or likeness." Dkt. No. 2, p. 14.

This Court dismissed *Scott v. Moon et al*., Case No. 2:19-cv-00005-JPJ-PMS, on January 24, 2019. Dkt No. 7. This Court expressly noted that its decision was the second dismissal of Ms.

Scott's claims based on statements allegedly made on the same website.[11] Dkt. No. 6, p. 1, fn. 2. As she is wont to do, Ms. Scott again appealed to the Fourth Circuit and to the Supreme Court of the United States. Both declined to grant her any relief.

Ms. Scott's most recent claim against Mr. Moon is the instant case pending before this Court, which was filed on July 8, 2020. In this litigation, Ms. Scott sought judgments against multiple defendants in an aggregate total of $675,000. For the first time, the Plaintiff did not expressly seek a Court order requiring Mr. Moon to remove information from the internet. Nevertheless, it is clear that the gravamen of the Plaintiff's complaint is that Joshua Moon owns a website on which people post information. Further, Ms. Scott has attempted to blackmail Mr. Moon into removing such material from the Internet as part of a "settlement," as set forth below and in the accompanying declarations.

## III. Factual Background: Plaintiff's Behavior in this Litigation

As noted at Dkt. No. 30, p. 5, fn. 2, the Plaintiff began a pattern of improper behavior in this matter almost immediately after undersigned counsel first entered his appearance. Illustrating a pattern that has continued to date, the Plaintiff stated early on that "It's going to be hilarious when someone gets reported to the BAR association." In that one sentence, the Plaintiff illustrated both how causally she threatens legal actions against her perceived enemies, and how lightly she takes the judicial process. Contrary to Ms. Scott's assertions, invoking the judicial process or the State Bar's disciplinary process is seldom if ever "hilarious."

---

[11] This Court may not have been aware of the Plaintiff's prior claims for appropriation in state Court or of her prior history seeking to have the same material removed from the Internet under varying state and federal causes of action or as part of her attempted prosecution of Mr. Carlson.

Although Ms. Scott attempted to walk back her knee-jerk claims that she would report undersigned counsel to the bar association by email dated December 11, 2020,[12] her pattern since has illustrated just how duplicitous that assertion was. By email dated December 19, 2020, she accused undersigned counsel of being "unethical" for what she alleged was his failure to file an exhibit that counsel had, in fact filed.[13] On January 8, 2021, Ms. Scott sent undersigned counsel a letter in which she stated that "To avoid attorney's fees and litigation costs Mr. Moon could have removed my name and photo."[14] By this correspondence, Ms. Scott made clear that this litigation, despite her protestations to the contrary, is nothing more than a continuation of her prior litigation against Mr. Moon in which she sought orders removing content from the Internet. She also made clear that it is her intent to use "attorney's fees and litigation costs" to force Mr. Moon to capitulate to demands that are unlawful and which the courts have already informed her are without merit.

By email dated September 16, 2021 to both undersigned counsel and the presiding magistrate judge, Ms. Scott threatened both undersigned counsel and the magistrate judge with reports to the Virginia Bar Association (*sic*) and the judicial ethics committee, respectively.[15] Ms. Scott's threats were made conditionally, with the implied caveat that *if* the judge and opposing counsel acceded to her wishes, no reports would be made. Ms. Scott repeated this threat in either two or three emails later that same day (one email was sent twice, so the total depends on the method of counting duplicates).[16] In brazen, hostile, and vitriolic correspondence to the judge, Ms. Scott also repeatedly accused undersigned counsel of "lying."

---

[12] See Declaration of Counsel, Exhibit D (p. 48).
[13] *Id.* at p. 46-47
[14] *Id.* at p. 44.
[15] *Id.* at p. 35.
[16] *Id.* at p. 2, p. 29.

By September 17, 2021, Ms. Scott's anger was still escalating. That day, Ms. Scott accused undersigned counsel of a "blatant lie" because undersigned counsel declined to join Ms. Scott in her alternative history of her past litigation in state and federal courts.[17] That same day, Ms. Scott wrote to the presiding magistrate judge again to state that undersigned counsel had subjected her to an "aggressive assault" and "made a false statement (lie)."[18]

As her anger and rage mounted, Ms. Scott was unable to achieve her desired end of forcing undersigned counsel to abandon his commitment to either his client or to an objective and record-based account of Ms. Scott's voluminous history of litigation in this and other courts. When undersigned counsel declined to capitulate following either three or four threats of bar complaints in the span of 24 hours, Ms. Scott sarcastically replied with an email signed "Ta-ta now."[19]

On September 24, 2021 Ms. Scott sent a letter to undersigned counsel in which she made clear that she intends to sue Mr. Moon *again* for "Appropriation" despite her serial failures to state a claim to date and the multiple judgments that have been entered in Mr. Moon's favor.[20] In that letter, Ms. Scott made the outrageous and extortionate "settlement" demand that Mr. Moon "remove my legal name, references to my business, and photos I don't consent to from his website."[21] In this letter, mere weeks after losing her most recent suit and contemporaneous with her in-court protestations that all of her suits have been filed under different causes of action for separate incidents and alleged acts, Ms. Scott made clear that despite her protestations to the contrary, this suit is about the same object as all of her previous, dismissed suits: Ms. Scott wants

[17] *Id.* at p. 32.
[18] *Id.* at p. 30.
[19] *Id.* at p. 29.
[20] *Id.* at p. 27.
[21] *Id.* at p. 27-28.

to force Mr. Moon to remove content regarding her from the Internet. If he does not do so, she will attempt to bankrupt him with the costs of a defense.

## IV.    Factual Background: Plaintiff's Behavior Towards Court Participants

Ms. Scott has serially accused both the presiding judge and the magistrate judge of improper behavior in this matter. See, e.g., Dkt. No. 15, 58, 88. Ms. Scott's complaints are fanciful and unmoored from any factual basis, but she persists nevertheless in throwing mud at public servants in the hope that some of it will stick.

Ms. Scott has twice sought the recusal of the presiding District Judge in this matter on the ostensible basis of either gender bias or masonic brotherhood ties. As the basis for her motions, Ms. Scott cited not to factual evidence or indicia of bias, but to a more unspeakable crime: the judge has had the audacity to rule against her. When the Magistrate Judge began issuing rulings that Ms. Scott perceived as unfavorable, Ms. Scott threatened judicial ethics complaints and ultimately filed a "notice" that she did not consent to the magistrate judge ruling on any matters in this case.

It may be difficult for Ms. Scott to locate a judge that she does consent to presiding in her matters. Despite repeated forum shopping, multiple trips to the state and federal appellate courts, and newfound assertions that all District Court judgments are void, unenforceable, or "in abeyance" because of improperly-filed notices of appeal, Ms. Scott has failed to locate even one judge who has ruled in her favor on any of her claims against Mr. Moon. There have been no appellate dissents either on the merits or in a petition for certiorari to the Supreme Court.

In the past, when Ms. Scott hasn't gotten her way in either the state or federal trial courts, she has filed petitions for writs of mandamus or even sued the judges and clerks. See, e.g., *Scott v. Lyall et al.*, Case No. 2:17-cv-50 (filed after the Buchanan General District Court awarded

sanctions against Ms. Scott) and *In re Scott*, 719 Fed App'x 281 (4th Cir. 2018) (filed after this Court refused to interfere in the affairs of the state courts and Ms. Scott declined to even identify the names of the defendants). Ms. Scott's behavior towards Court participants makes clear that they have only two choices: they can accede, wholly and without even a hint of reservation, to her every desire. Or they can issue even one ruling against Ms. Scott and face threats of legal action in the form of a civil suit, a writ of mandamus, a judicial ethics complaint, or some combination of the foregoing.

**V. Factual Background: Plaintiff's Behavior on Kiwi Farms**

Plaintiff Scott has repeatedly claimed that this suit was filed purely because she was emotionally distressed as a result of content on a website called Kiwi Farms (www.KiwiFarms.net). But the Plaintiff's behavior to date reveals that she is a regular poster on that website, and that she herself has repeatedly posted her own image and name on the website.[22] Far from being distressed at the content on the Internet, it appears that the Plaintiff delights in being "Internet Famous" and regularly shares details regarding many aspects of her life, on subjects as wide-ranging as her ongoing legal campaign against Mr. Moon to the intimate details of her sex life with her husband(s) and/or "concubines."

The Plaintiff has made over 2,700 posts on Kiwi Farms.[23] That number continues to escalate as this Motion is being drafted. A few select quotes from those posts follow in order to demonstrate that whatever Ms. Scott's purposes were for filing this lawsuit, they were improper. Each quote is authenticated in the accompanying declaration of Defendant Moon (with photographic evidence included as exhibits).

---

[22] *See generally* Declaration of Joshua Moon.
[23] *Id*.

1) "I clearly said I sued KF/Mr. Looney Mooney to further my legal education while I was out of law school... And I clearly said Im not a pacifist." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-95#post-5848238).

2) "I don't regret filing. I maintain my dignity giving Joshua Moon the middle finger in a legal manner." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-911#post-8374882).

3) "The default was entered, PERMANENTLY. The default judgment is simply an extension of that. I'll give Mr. Joshua Moon his EYE FOR EYE as long as I can! Fuck you Joshua Moon!" (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-702#post-7777910).

4) "The reason I filed the lawsuits, even though I'm not bothered by what is said here, is because I reason that it's better to try and be told "no" than not try at all. Instead of waking up years down the road and say "I should have sued him go remove the threads" I take care of business now. Even if the courts say "no" it's better that I at least tried instead of having regrets of not taking action." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-308#post-6363111).

5) "And we all know that Joshua Moon is too much of a coward to fight me in mutual combat with fists on some fine Virginia soil. That's why he hides behind a computer. He knows I could kick his ass with my just my fists." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-912#post-8377174).

6) "[M]y motives for filing lawsuits were already addressed pages and pages back. It certainly wasn't because I give a fuck what a bunch of uneducated pagans think about me,

Marshall or my family. I don't value your opinions about us at all. Why would a lioness care about worms under her foot? They grovel in shit and filth in the darkness while she moves around freely in the sunshine." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-222#post-6158804).

7) "You guys are bringing traffic to my scholastic work, especially my anti-Polygyny paper. So I actually am ambivalent about whether or not I want these threads removed." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-208#post-6024919).

8) "To the contrary, my publisher and I already had a talk about this site… If anything, Kiwi Farms will only help me BOOST sales because when educated people (unlike yourself) see me promoting anti-patriarchal, anti-misogynist talk, they will be more than happy to support me. I've already gotten dozens of emails from people reaching out to me about how trashy this site is and sympathetic to my cause to sue you. Opening your mouth and standing against the dumb-masses is actually what has made many politicians, sales people, and book authors FAMOUS Eat Shit." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-236#post-6181649).

9) "In fact, my arguments with you all have "inspired" a paper I am publishing next month. I'm not giving away the title early, but I think it will be a hit!" (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-716#post-7827395).

10) "You guys don't make me feel bad about myself at all. I love myself and I'm blessed. I wake up every day praising Elohim. Actually, the opposite is true: coming here debating you all actually makes me giddy. I get a natural high watching you Goyim fumble in your

folly." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-999#post-8949562).

11) "My reputation on Kiwi Farms is scarcely a cause for alarm. I'm not losing anything from a bunch of uneducated pagans having a bonfire around my name. Big deal, I could care less." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-227#post-6168700).

12) "And I did it all proudly with an account that isn't anonymous." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-543#post-7328578).

13) "My financial status was like that before Kiwi Farms. I take a tremendous pay cut being self employed and homeschooling." (https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-335#post-6425220).

The comments set forth above are but a small sampling, but they are illustrative of the thousands of comments Ms. Scott has posted on Kiwi Farms. She has admitted:

1) That Mr. Moon's website has no impact on her financial status and has not caused her any injury.[24]
2) That the site is no big deal (she is "not bothered" by what is said on Kiwi Farms), or even that the site beneficial to her business ventures and personal fulfillment.
3) That Ms. Scott has sued Mr. Moon out of an "Eye for an Eye" world view, to give the "middle finger" to Mr. Moon and to "educate" herself about the law, rather than because she was genuinely injured and seeking recompense.

[24] This appears congruent with statements Ms. Scott made to the Wise County Circuit Court. See Declaration of Counsel at p. 22.

**VI. Standard of Review for Costs**

Under Fed. R. Civ. P. 54(d), a prevailing party is presumptively entitled to costs "other than attorneys' fees," unless a federal statute, the federal rules, or a court order provides otherwise. See Fed. R. Civ. P. 54(d)(1); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) (the rule "creates the presumption that costs are to be awarded to the prevailing party").

This rule "does not grant the district court 'unrestrained discretion to reimburse the winning litigant for every expense he has seen fit to incur,'" *Francisco v. Verizon S., Inc.*, 272 F.R.D. 436, 441 (E.D. Va. 2011) (quoting *Farmer v. Arabian Am. Oil. Co.*, 379 U.S. 227, 234, 85 S. Ct. 411, 13 L. Ed. 2d 248 (1964)), but it does give the court "wide latitude" to award costs listed in 28 U.S.C. § 1920. Those costs include (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. See 28 U.S.C. § 1920.

The district court may deny costs to a prevailing party "only when there would be an element of injustice in a presumptive cost award." *Cherry*, 186 F.3d at 446; see also *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994) (explaining that the district court must "articulat[e] some good reason" for departing from the presumption in favor of awarding costs).

A party's good faith in bringing her suit "is alone insufficient to warrant a denial of costs in favor of a prevailing defendant." *Teague*, 35 F.3d at 996 (citing *Coyne-Delany Co. v. Capital Dev. Bd. of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983)); see also *Cherry*, 186 F.3d at 447 (explaining

that denial of costs based on good faith alone would "frustrate the operation of Rule 54(d)(1) because the losing party in most cases has acted in good faith"). Instead, the district court generally may deny costs to the prevailing party *only* if the court identifies both good faith and "additional factors," *Cherry*, 186 F.3d at 446, such as "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided," *Ellis v. Grant Thornton LLP*, 434 F. App'x 232, 235 (4th Cir. 2011).

**VII. Standard of Review for Attorney's Fees**

Under the bad faith exception to the American Rule, a court may award attorneys' fees against a losing party or attorney who has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Blue v. U.S. Dept. of the Army*, 914 F.2d 525, 533 (4th Cir.1990), quoting *Alyeska Pipeline Serv. Co v.Wilderness Soc'y*, 421 U.S. at 258-59 (itself quoting *F. D. Rich Inc. Co. v. Indus. Lumber Co*., 417 U.S. 116, 129, 94 S. Ct. 2157, 40 L. Ed. 2d 703 (1974)). A court may also assess attorneys' fees for the "willful disobedience of a court order… as part of the fine to be levied on the defendant." *Alyeska*, 421 U.S. at 258, citing *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426-428 (1923). A Court's decision whether or not to assess attorney's fees under these circumstances is an exercise of the Court's inherent authority and is distinct from its authority to impose attorney's fees under Fed. R. Civ. P. 11 or its statutory authority to impose fees under various Congressional enactments.

**VIII. Argument**

Mr. Moon is entitled, as a matter of right, to an award of costs other than attorney's fees under Fed. R. Civ. P. 54. Those costs are mercifully low (in part because undersigned counsel

feels it is uneconomic to expend attorney or staff time calculating postage costs and Pacer fees), but this Court should nevertheless award them based upon the accounting set forth in the attached declarations. Even if this Court were to assume that the Plaintiff acted in good faith, an award of costs would nevertheless be required under *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994).

This Court should go one step further, however, and award not only the costs of Mr. Moon's defense but also Mr. Moon's attorney's fees. Mr. Moon will not tire this Court with yet another discussion of Ms. Scott's voluminous litigation history.[25] Instead, he will point to the facts set forth above and in his prior filings, and respectfully submit that an award of attorney's fees is appropriate for two reasons: First, the Plaintiff has acted vexatiously and oppressively in filing lawsuits *seriatim* against Mr. Moon for the same underlying conduct. Second, the Plaintiff has failed to obey Court orders by re-filing identical claims after her prior suits were dismissed, and by attempting to extort Mr. Moon into removing content from the internet under the guise of "settling" her current case, even when Ms. Scott had previously failed to achieve such an end through the ordinary legal process or in her previous cases.

In this case, the Court is presented with a Plaintiff who by her own admission is "not bothered" by content on Kiwi Farms, but who has nevertheless sued the same defendant multiple times regarding that content. In this case, the Court is faced with a Plaintiff who claims emotional distress, but whose own words are indicative not of distress but rather of vitriol and hatred. In this case, the Court has before it a Plaintiff who has expressed repeatedly that she will not take no for an answer, will ignore dismissals of her complaints, will re-file and appeal

[25] Sadly, the final chapter of Ms. Scott's history of vexatious and oppressive litigation has yet to be written. Further meritless filings at the Fourth Circuit continue to pile up on a weekly basis, even following this Court's finding that Ms. Scott's appeal was taken in bad faith.

(repeatedly) to the appellate courts, and will argue that she is not bound by any judgment this Court enters.[26]

Even leaving aside Ms. Scott's arguments on the merits of her claim for Emotional Distress, and that such statements are made in bad faith and in apparent conflict with her out-of-court statements, this Court must also address the manner in which Ms. Scott has prosecuted this litigation. Ms. Scott has repeatedly threatened Court participants and opposing counsel who have stood between her and her preferred outcome. She has made fact-free assertions that sitting judges are colluding in secret societies with respected members of the bar. Ms. Sott has abused the *in forma pauperis* process, wasted judicial resources on frivolity, personal vendettas, and score-settling, and has needlessly insulted the dignity and decorum of this Court.

If ever this Court were inclined to grant attorney's fees to a prevailing defendant under the Bad Faith Exception, this is the case for doing so. Mr. Moon has been and continues to be the target of bad faith litigation filed repeatedly by the same Plaintiff relating to the same subject. The Plaintiff's in-court behavior and out-of-court statements both make plain that fee shifting is required to make Mr. Moon whole and deter the Plaintiff from repeating this sixth round of her litigation against Mr. Moon with a *seventh* encore performance.

## IX.  Conclusion

This Court should award attorney's fees under the Bad Faith Exception to the American Rule because it is clear that this suit was not filed in good faith and was filed for an improper purpose. This Court should further consider whether a pre-filing injunction ought to be ordered, which

---

[26] As stated elsewhere herein, Mr. Moon expects to prove that Ms. Scott ignores even valid judgments imposing sanctions against her by other courts. A supplemental motion will establish such a pattern and further lay bare the contempt with which Ms. Scott treats any judgment that is not in her favor.

will protect Mr. Moon from further meritless litigation until any award of attorney's fees and costs is paid.

Respectfully submitted this the 13th day of October, 2021,

JOSHUA MOON

**By Counsel:**

/s/Matthew D. Hardin
Matthew D. Hardin, VSB #87482
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: MatthewDHardin@protonmail.com

**Certificate of Service**

I hereby certify that I will file a true and correct copy of the foregoing document with the Court's CM/ECF system, which will electronically serve counsel of record. I have also deposited a true and correct copy of the foregoing document into the U.S. Mail, with First Class postage prepaid, directed to:

Melinda Scott
2014PMB87
Post Office Box 1133
Richmond, VA 23218

Dated: October 13, 2021

/s/Matthew D. Hardin
Matthew D. Hardin
*Counsel for Joshua Moon*