

RECEIVED

2021 NOV 29 AM II: 50

U.S. COURT OF APPEALS
FOURTH CIRCUIT

## IN THE FOURTH CIRCUIT
## COURT OF APPEALS

MELINDA SCOTT,    )
    )
APPELLANT.    )
    )
V.    )    Case No. 21-2006
    )
WISE CO. DSS,    )
ET AL.,    )
    )
APPELLEES.    )

### APPELLANT'S REPLY
### TO APPELLEE JOSHUA MOON'S
### "MOTION TO STRIKE
### APPELLANT'S REPLY TO
### MOTION FOR ATTORNEY'S FEES"

COMES NOW, Appellant, Melinda Scott, and responds to Appellee Moon's "Motion to Strike Appellant's Reply to Motion for Attorney's fees.

### I.    FACTS ARE NOT "SCANDALOUS"

Appellee Moon, by counsel, constantly uses legal words outside of their accepted legal definition and his recent Motion to Strike is no exception. In his prior pleadings he consistently has used the words "vexatious", "frivolous", "bad faith", "wanton" and "oppressive" outside of their accepted legal definition. This

USCA4 Appeal: 21-2006    Doc: 29    Filed: 11/29/2021    Pg: 1 of 24

time, he has tried to use the word "scandalous" outside of it's accepted legal definition.

**Legal definition in Fourth Circuit of "scandalous".** A "scandalous matter" is one that is false and unrelated to the parties. In *Balir v Shenandoah Women's Center, Inc,* a complaint was considered to be made in bad faith because it was one in which "scandalous and irrelevant allegations were made about the personal lives of Shenandoah's employees" (*Blair v Shenandoah Women's Center, Inc. 757 F. 2d 1435 Court of Appeals, Fourth Circuit, 1985*). The court decided that the material was "scandalous" because it overreached into the personal lives of the parties on issues that were not relevant to the claims of the moving party. In the case here before the Appeals Court, Appellant Scott has <u>not</u> made any mention of the personal lives of anyone in any of her pleadings. Everything she said in her response was relevant to the claims, injuries, damages and issues <u>initiated</u> by Appellee Moon's Motion for Attorney's Fees.

In *In re Knight Pub. Co.* the Fourth Circuit decided that a "scandalous" matter was one in which a court record was used to "promote public scandal". "We note that the court has the power to ensure that its records are not used to "promote public scandal" (*In re Knight Pub. Co., 743 F 2d 231 Court of Appeals, Fourth Circuit, 1984* citing *Nixon v Warner Communications, Inc. 435 US 589, 598, 98 S. Ct. 1306, 1312, 55 L. Ed.* 2d 570 (1978)). Nothing in Appellant's response is for the promotion of a public scandal. She has only stated facts in her response which relate to the circumstances of the case. Further, in *In re Knight Pub. Co.,* the excised material the court chose to strike from the pleadings was not related to the parties. The Fourth Circuit stated that "[t]he excised material does not refer to the prosecutor". The excised material did not relate to the claims against the prosecutor, therefore, it was stricken. This is not the case

USCA4 Appeal: 21-2006    Doc: 29    Filed: 11/29/2021    Pg: 2 of 24

here with Appellant Scott. Here in this case, everything Appellant Scott has stated in her response relates to the claims against her, the Appellant Scott. Appellee Moon, by counsel, absurdly believes that Appellant Scott has no right to defend herself by providing contextual details around his (false) accusations against her. His attempt at striking the record is an attempt at trying to create a prejudicial advantage for himself.

Further, in *In re Kunstler*, the Fourth Circuit Court of Appeals held that a a "scandalous" matter was one in which "the allegations against state and local officials 'have nothing to do with this case....and are factually unsubstantiated'" (*In re Kunstler, 914, F 2d 505 Court of Appeals, 4th Circuit, 1990*). The court determined that the pleading was "scandalous" because the allegations were "wholly unsupported in fact", and therefore, "sensational". This does not match the circumstances with Appellant Scott. Here in this case, everything Appellant Scott stated regarding her interactions with government officials was support with facts. Below, Appellant Scott will outline again the very facts which she stood upon in her response. Appellant Scott's facts presented may be offensive or inconvenient for Appellee Moon, but that does not make her facts "scandalous", when examined according to the legal definition of the Fourth Circuit.

Below Appellant Scott will demonstrate that Appellee Moon, by counsel, has falsely accused Appellant Scott of "scandalous" matters which are actually relevant facts for the purpose of answering Appellee Moon's motions. His use of the word "scandalous" does not fall within the accepted legal definitions of "scandalous" for the Fourth Circuit, as defined by the case law cited above. First, Appellant Scott will expand on the legal standards of "scandalous" in *Arunachalam* which Appellee Moon presented before this court, although his use of this case actually undermines his claims.

USCA4 Appeal: 21-2006    Doc: 29    Filed: 11/29/2021    Pg: 3 of 24

## II.   LEGAL STANDARD IN *Arunachalam v IBM*

Appellee Moon's attempt to stand upon *Arunachalam v IBM* is unavailing. In *Arunachalam* the Plaintiff made sweeping legal conclusions, <u>unsupported by facts</u> about the government and district court. These were deemed "skeleton arguments": "Dr. Arunachalam's assertions are *insufficiently developed*. In order for this court to reach the merits of an issue on appeal, it must be *adequately developed*." (*Monsanto Co V Scruggs 459 F #d 1328, 1341 (Fed. Cir. 2006)*; see id. (holding that undeveloped arguments are "deemed waived"); *United States v. Dunkelt, 927 F. 2d 955, 956 (7th Cir. 1991)* ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim" (emphasis added) (*Arunachalam v IBM, 989 F.3d 988 (Fed. Cir. 2021)*). This is a distinguishing factor between *Arunachalam* and Appellant Scott's case. While Appellant Scott has made legal arguments in her response, they have been *further developed* and filled out by facts to support her legal arguments. Appellee Moon's attempt at comparing Appellant Scott's response to the pleadings in *Arunachalam* fails in that the 2 cases are not synonymous in their circumstances.

## III.   FACTS

## A. FACT: COUNSEL HARDIN HAS LIED IN COURT PLEADINGS

Appellant Scott has factually stated in her pleadings before the Appeals Court that Counsel Hardin has lied in court pleadings, both at the district court and appeals court levels. This is not a false accusation. He has lied by making outright blatantly false statements that need no interpretation (to see they are lies/false statements), he has lied by omission to mis-represent matters, and he has lied by making statements only to later admit that he would have to search for facts to support his claim (ECF/docket #63), even though Fourth Circuit case law and Federal Rule 11 do not permit a litigant to make claims and then later try to later find evidence to support the claim. "A Rule 65(b) motion does not authorize counsel to request relief and then search through discovery for facts to support the relief already requested" (*In re Kunstler, 914, F 2d 505 Court of Appeals, 4th Circuit, 1990*). The fact that Counsel Hardin has actually, in fact, lied in pleadings, makes it a fact to say "he lied". That isn't "scandalous" according to the accepted legal definitions of "scandalous" as cited in the above case law. It is *truth*, not scandal.

Appellant Scott fully documented a series of false statement/lies that Counsel for Appellee Moon made before the district court (ECF/docket #89). To simplify it for the court, a <u>factual</u> list of lies he made in the district court and appeals courts follows:

1. He made a blatant outright false statement and lied in district court [ECF/]docket #63 saying that Appellant Scott admitted to improper

USCA4 Appeal: 21-2006     Doc: 29     Filed: 11/29/2021     Pg: 5 of 24

motives for filing her Complaint, when no such fact was presented by him to support that lie/false statement.

2. He lied in the district court [ECF/]docket #73 in which he stated a Fourth Circuit federal court denied Appellant Scott an appeal bond exemption, when no such facts exist. (The Fourth Circuit denied Appellant Scott a *Writ of Mandamus* <u>on the basis that</u> it could not be a substitute for an appeal).

3. ECF/docket #89 in the district court outlines more lies/false statements he made, including, but not limited to, falsely accusing the Appellant of attempting to extort a settlement from Appellee Joshua Moon, even though no such facts exist to support this false statement he made (statement made in district court [ECF/]docket #85). He repeated this false statement/lie in his Motion for Attorney's fees filed before this Appeals Court.

4. He supported his client in lying before both the district court and appeals court by falsely accusing Appellant Scott in his client's signed "Declaration" of making death threats against Appellee Moon for him (potentially) collecting a judgment of attorney's fees. His client lied, while signing under "penalty of perjury", and falsely stated that Appellant Scott threatened to "shoot him if [he] collected a judgment". No facts exist to show any place where Appellant Scott said she would shoot Appellee Moon solely because he would try to collect a lawful judgment. It's a lie/false statement made in violation of federal law and federal rules and Counsel Hardin submitted this to both the District Court and Appeals Court.

5. Counsel Hardin lied in the district court when he named Andrew Carlson as her "ex-boyfriend" and again submitted this lie to the Appeals Court in his Motion for Attorney's fees.

6. Docket #97 filed by Appellant Scott in the district court names 5 more lies that Counsel Hardin put into his pleadings, including, but not limited to, that Counsel Hardin lied to the district court by falsely stating that the Appellant consented to her name being on Appellee Moon's website (stated by him in district court ECF/docket #90-1, page).

7. Docket #101 filed by Appellant Scott contains an outline demonstrating six (6) more lies that Counsel Hardin submitted to the district court, including but not limited to: (a) repeating the blatant false statement/lie that the Appellant tried to extort sums of money from Appellee Joshua Moon and (b) that the Appellant tried to use her husband to fight Appellee Moon to avoid attorney's fees.

Counsel Hardin, as a matter of *fact,* has lied to the courts in pleadings. Even giving him the "benefit of the doubt", that some of his "lies by omission" are open to interpretation and even if given the graceful opportunity for clarification, there still sits before these courts a handful of *blatant* false statements/lies he made that, on their face value, need no interpretation or clarification because they are outright lies. All the following are blatant lies he stated that need no interpretation of "writers intent", their meaning is clear, and they are lies on their face value:

1. Accusing the Appellant of admitting to an improper motive for filing her Complaint

2. Repeatedly accusing the Appellant of trying to extort money from Appellee Moon

3. Accusing the Appellant of trying to orchestrate a duel between her husband and Appellee Joshua Moon to avoid attorney's fees

USCA4 Appeal: 21-2006    Doc: 29    Filed: 11/29/2021    Pg: 7 of 24

4. Repeatedly falsely accusing the Appellant of threatening to shoot Appellee Moon if he tries to collect a [court ordered] judgment.

5. Repeatedly accusing the Appellant of not satisfying a judgment in a sister court when the online records show that no such judgment exists in the court's online database as outstanding

6. Repeatedly falsely stating that Andrew Carlson is the Appellant's ex-boyfriend

Counsel Hardin has brazenly made false statements in order to (a) gain an advantage in court and (b) deflect from his client's *actual* malicious behavior, including his own client's *actual* threats of violence against Appellant Scott, and his client's website users *actual* threats of violence directed at Appellant Scott. It is Appellee Joshua Moon and his anonymous users that have made *actual* threats of violence against Appellant Scott. Appellee Moon and his counsel do not want this court to know that. The "Motion to Strike" was filed for the improper motive of suppressing evidence and pertinent facts that this court needs to know.

## B. FACT: JOSHUA MOON WAS INVOLVED IN A WEBSITE THAT PROMOTED CHILD PEDOPHILIA AND THIS IS A REAL AND TRUE DANGER TO HIM HAVING ANY ACCESS TO INFORMATION ABOUT THE APPELLANT AND HER MINOR CHILDREN

Counsel Hardin has falsely accused Appellant Scott of "baselessly accusing a party of some sort of conspiracy to commit or involvement with sexual crimes against children" (¶4). There is nothing "baseless" about anything that Appellant Scott said in her response with regard to the correlation between Joshua Moon's

threats of violence against the Appellant, the threats from his users against her minor children, and his involvement in websites that promoted child pedolphilia. Every single statement Appellant Scott made in her responses were sourced with facts of evidence and citations from reputable news sources and online archives.

It is a *fact* that Joshua Moon was involved in the creation and continuation of 8Chan and 16Chan. It is a *fact* that these sites promoted online child pedophilia content. However inconvenient these truths are to Appelle Joshua Moon, does not make them "scandalous" according to the accepted legal definitions defined by the Fourth Circuit, as cited above in relevant case law. If Appellee Joshua Moon believed any of it was Defamation (libel), he could have sued and prevailed in a court of law to remove the content from the newspapers and online blog postings. This court should consider carefully why Joshua Moon has not sued any of these reputable news sources and online blogs to remove the content if it is Defamation (libel).

Further, although Appellee Joshua Moon believes that the inclusion of this information is irrelevant to a Motion for Attorney's Fees, this conclusion is not one based on the totality of the facts. As fully evidenced and documented in her response and pleadings before the district and appeals courts, Appellee Moon's website has a history of "doxx"ing and Cyberstalking targets they hand pick. This doxxing and stalking includes publicly posting for an international audience information about their targets *and information about their target's minor children* (gender, names, ages, address, whereabouts, etc). The anonymous users of the Appellee Moon's website, and even Appellee Moon himself, have made consistent threats to use information obtained through discovery and court records to continue to harass and Cyberstalk the Appellant and her minor children (see district court ECF/docket #113 Exhibits).

The inclusion of the information regarding child pedophilia is completely relevant to a response to the Motion for Attorney's fees because it is - as a matter of fact - dangerous for this court to grant the Appellee Moon's Motion for Attorney Fees. Appelle Moon and his website users want to use any information obtained through court discovery processes to get closer to Appellant Scott's front door and closer to her minor children. Granting a Motion for Attorney's Fees is dangerous due to the fact that Appellee Moon was previously involved with websites that promoted child pedophilia. It is dangerous due to the fact that Appellee Moon and his website users have aimed threats of violence at the Appellant and her minor children[1], showing that they have a disposition of malice, hostility and intent to engage in criminal behavior toward the Appellant's minor children. It is dangerous due to the fact that Appellee Moon and his website users have a history of using court documents to Cyberstalk the Appellant and have made threats to do the same to her minor children[2]. It is dangerous due to the fact that Appellee Moon has admitted to wanting to use documents obtained by court process discovery to harass and cause bodily injury to the Appellant[3]. Appellee Moon's conclusion that this court should not know

---

[1] See district court ECF/docket #43 Exhibits were an anonymous user on KiwiFarms.net made a death threat to Appellant Scott; also
https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6005455; (B) threats to do bodily injury to her minor children:
https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6939700
[2] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-10278703
[3] Joshua Moon owns a YouTube channel called "MATI Archive". In a YouTube video published on his channel, which was entitled "The Fungus Among Us" and published September 10, 2021, Joshua Moon stated he had: (a) the intent to harass the Appellant via third parties he planned to hire and send to her house (b) the intent to cause the Appellant bodily injury through a third party he planned to hire and send to her house, (c) the intent to send drunkards, intimidating strangers and trouble makers who bring crime to the Appellant's house to take her money and property. The hyperlink to the video is
https://www.youtube.com/watch?v=2BCenYWoLw0./// His statements appear on the following at timestamps: (1) Intent to send a harassing drunkard: 1:05:50: "I need aggravating white trash in the state of Virginia willing to visit this house and demand property...I need the most lickerish man that has ever lived to wear a GoPro and record himself..." (2) Intent to cause bodily injury by a third party: 1:06:34: "I need someone...who can handle himself in a physical confrontation" (3) Intent to harass the Appellant via a third party: 1:06:58: "My thought is, if she's currently being harassed by white trash incarnate, she cannot sue

USCA4 Appeal: 21-2006    Doc: 29    Filed: 11/29/2021    Pg: 10 of 24

about his and his website users' history with child pedolphlia, as well as their threats to stalk her minor children is a conclusion not based in reality and fact. Appellee Joshua Moon can try to deny these facts all he wants, it doesn't change the evidence that him and his users have a malicious disposition to her minor children.

This court should know these facts. This court is obliged to protect litigants in a non-prejudicial manner. The Supreme Court has acknowledged the dangers of the misuse and abuse of the internet to harm people and the judicial branches responsibility in preventing it. In *Packingham v. North Carolina,* the Court considered the use of social media by a registered sex offender. While holding that sex offenders could not be barred from social media, it still acknowledged the misuse and abuse of the internet by devious minds. "For centuries now, inventions heralded as advances in human progress have been exploited by the criminal mind. New technologies, all too soon, can become instruments used to commit serious crimes" (*Packingham v. North Carolina, 137 S. Ct. 1730 - Supreme Court 2017*). In *Marachich v. Spears,* the Court again acknowledged that valid public concern about the misuse of public information should prompt the legislative and judicial branches of government to act: "Public concern regarding the ability of criminals and stalkers to obtain information about potential victims prompted Congress, in 1994, to enact the DPPA. A particular spur to action was the 1989 <u>murder</u> of the television actress Rebecca Schaeffer <u>by</u>

me anymore...". (4) Intent to engage in phone harassment 1:07:10: "being called at random hours of the day" (5) Intent to send strangers to the Appellant's residence: 1:07:15 "and being visited by <u>a strange man</u>..." (6) Intent to use video footage for Internet Harassment: (a) 1:07:34: "You can stream the footage" and (b) 1:07:37 "As long as I can also do whatever I want with the footage.(7) Intent to send a troublemaker who brings crime along with him to Appellant's house: "Ice Poseidon needs money, right?". "Ice Poseidon" (Paul Denino) is another toxic website owner whose followers commit crimes against people featured on his show (See https://dotesports.com/streaming/news/ice-poseidon-releases-open-letter-to-twitch-apologizes-for-past-behavior)

a fan who had obtained her address from the California DMV. Taylor v. Acxiom Corp., 612 F.3d 325, 336 (C.A.5 2010)" (*Maracich v. Spears, 133 S. Ct. 2191 - Supreme Court 2013*). The Appellant is not alone in her concern regarding the misuse of identifying information by random people. It is a common societal concern expressed by many reasonable people because the potential for the misuse of public information is real.

Further, the Court went on to address the specific harm to children of anonymous users on the internet which gives guidance to lower courts in making decisions: "an abuser can use a child's location posts on the Internet to determine the pattern of the child's day-to-day activities — and even the child's location at a given moment. Such uses of the internet are already well documented, both in research and in reported decisions. Because protecting children from abuse is a compelling state interest and sex offenders can (and do) use the internet to engage in such abuse, it is *legitimate* and entirely *reasonable* for States to try to stop abuse from occurring before it happens (emphasis added) (*Packingham v. North Carolina, 137 S. Ct. 1730 - Supreme Court 2017*).

Kiwi Farms users and Stalkers, are anonymous. Any criminal can sign up for an account to stalk others on the site. They have continuously tried to imply that their activities - like reposting identifying information of their victims by "doxxing" - are simply "free speech" protected under the First Amendment. The Court has stated otherwise. Cyberstalking - even in disguised forms - is not

permitted under law. "Specific criminal acts are not protected speech even if speech is the means for their commission." (*See Brandenburg v. Ohio, 395 U.S. 444, 447-449, 89 S.Ct. 1827, 23 L.Ed.2d 430* (1969) (per curiam)). The re-posting of the Appellant's identifying information, and information that can be used to stalk the Appellant and her minor children are not protected "Free Speech".

## C. FACT: JOSHUA MOON
## AND HIS WEBSITE USERS ARE DANGEROUS

This malicious disposition demonstrated by Joshua Moon and his website users make everything the Appellant Scott stated in her response all the more relevant. This court needs to know that Joshua Moon and his website users intend to use any information obtained through court discovery to harass, stalk, and commit bodily injury against the Appellant and her minor children. Appellant Moon has adequately demonstrated in her pleadings before the district court and this court that KiwiFarms.net users have been involved in the planning of several mass shootings. The mass shootings that 8Chan were involved in were documented and cited in Appellant's Response. More about Cyberstalking of the Appellant and the planning of mass shootings KiwiFarms.net have been involved in (the website that Joshua Moon owns) are documented with the district court (ECF/docket #43, page 8-10, "VIII. Death Threats, Harassment and Serial Killers on KiwiFarms.net").

Between March 13, 2017 and the present date, users of Appellee Moon's website KiwiFarms.net have engaged in Cyberstalking behaviors, including but

not limited to: (a) tracking the Appellant's residential information[4] (b) tracking the Appellant's county of residence[5] (c) tracking the Appellant's whereabouts[6] (d) sharing information from their findings of bullets (a) through (c) for an international audience by posting it on the website KiwiFarms.net, (d) sent the Appellant harassing emails saying they intended to use her residential information to exploit and harm her (see ECF/district court docket #43, Exhibit A), (e) made death threats to the Appellant (ECF/district court docket #43, exhibit B) (f) made threats to do bodily injury to the Appellant[7] (g) made threats to do bodily injury to her children[8] and (h) made threats to stalk her children through "doxxing" and otherwise[9] (also docket #43, exhibit A). Joshua Moon and his users are a true danger to the Appellant and her minor children. Appellee Moon can try to deny all of these facts all he wants, the evidence stands against him.

## D. FACT: JUDGES AND CLERKS IN SOUTHWEST VIRGINIA ACTED UNDER "COLOR OF LAW" TOWARD THE APPELLANT

Appellant Scott denies Appelle Moon's accusation that she has "accused the entire judiciary of Southwest Virginia of corruption" (¶1). This is yet another false statement from Appellee's side. Appellant's *actual* and *exact* statements were: (a) "there is a pattern of behavior from courts in Southwest Virginia" and

---

[4] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6902180
[5] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-10233989
[6] https://kiwifarms.net/threads/2018-12-12-melinda-leigh-scott-v-andrew-carlson-joshua-moon-sherod-degrippo.50975/post-4097481
[7] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6005455
[8] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6939700
[9] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-10278703

(b) "it is the cultural norms of Southwest Virginia that apparently bend toward corruption". "Cultural norms" are not the judiciary. Appellant Scott cited <u>with facts</u> the exact examples in which a *specific* state and federal court situated in Southwest Virginia acted under "color of law". Appellant Scott has fully cited, sourced and demonstrated *facts* in her response which show that more than one judge and clerk in Southwest Virginia has acted under "color of law" when handling her case.

This information is relevant to bring up in order to respond to the claims of Appellee Moon in his Motion for Attorney's fees. It's as if Appellee Moon asburdly believes Appellant Scott has no right to defend herself. This court needed to be made aware that the issues Appellant Scott has had with judges and clerks have been isolated to Southwest Virginia. The Appellant Scott supported this statements with <u>facts</u> in her Response. For example, she stated:

1. The <u>fact</u> that Appellant Scott has only had judges and clerks west of Roanoke (in Southwest Virginia) treat her under "color of law".

2. It is a <u>fact</u> Appellant Scott was granted a petition to proceed *in forma pauperis* in the Buchanan County Court. It is a <u>fact</u> that Appellant Scott was then asked to post an Appeal Bond in violation of Va Code 16.1-107(B), which is a statutory right. Therefore, it is a <u>fact</u> that clerks and judges in Buchanan County General District Court denied Appellant Scott her appeal bond rights under "color of law".

3. It is a <u>fact</u> that the district court did not follow the law with regard to issuing an appeal bond order.

The Appellant does not need to re-iterate every single fact brought forth in her response, it is available for this court to read. Yet however offended or

inconvenient these *facts* are for Appellee Moon is irrelevant. Facts do not fall under the legal definition of "scandalous". Appellee Moon simply not liking the facts doesn't make the Appellant's factual statements liable to be stricken as scandalous.

## IV.   OTHER CONSIDERATIONS

### A. LEGAL STANDARD FOR MOTION TO STRIKE

Absent in Appellee Moon's Motion to Strike is any case law from the Supreme Court, case law from the Fourth Circuit, or Appellate Federal Rule which permits him to file a Motion to Strike in an Appeals court. A "Motion to Strike" for "scandalous" material is listed in the Federal Rules for a district court. "Federal Rule of Civil Procedure 12(f) permits a *district court,* on motion of a party, to "order stricken from any pleading any insufficient defense." Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a *drastic remedy* and because it is often sought by the movant simply as a *dilatory tactic.*" (emphasis added) (*Waste Management Holdings, Inc. v. Gilmore, 252 F. 3d 316 - Court of Appeals, 4th Circuit 2001*). Likewise, Appellee Moon's Motion to Strike is simply a dilatory action, aimed at trying to silence the Appellant in a prejudicial manner.

**Purpose of a 12(f) motion.** Further, the Fourth Circuit Court of Appeals has held that the purpose of a 12(f) motion is not to swipe from the table facts that are offensive or uncomfortable to the opposing party. "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

USCA4 Appeal: 21-2006      Doc: 29      Filed: 11/29/2021      Pg: 16 of 24

arise from litigating spurious issues by dispensing with those *prior to trial…"*
(emphasis added) (*Fantasy, Inc. v Fogerty, 984 F. 2d 1524 Court of Appeals, 4th
Circuit* citing *Sidny-Vinstein v AH Robins Co., 697 F. 2d. 880, 885 (9th Cir.
1983)*). As cited by the Fourth Circuit Court of Appeals, a Rule 12(f) motion to
strike is raised <u>prior to trial,</u> to avoid having to litigate "spurious" issues. Appellee
Moon, by counsel, *initiated* in his Motion for Attorney's Fees all of the issues
Appellant Scott had to answer in her response. If he didn't want to spend time
and money litigating the issues, he shouldn't have brought them up. His
conclusion that he should be able to raise issues and the Appellant should not be
able to respond is manipulative and absurd, with the end goal of advocating
prejudicial rulings against Appellant Scott.

## B. APPELLEE JOSHUA MOON'S
## REQUEST IS PREJUDICIAL TO APPELLANT

Appellee Joshua Moon seeks to strike Appellant Scott's response from the
record because of (factual) statements made by Appellant Scott. His request is -
not unsurprisingly - a double standard for himself. He has not shied away from
using hostile, mean-spirited, and accusatory language about Appellant Scott in
his pleadings. He has repeatedly made accusatory statements against the
Appellant that have no basis in fact.

Appellee Moon, by counsel, seeks to address this court in any way he so
pleases, but attempts to silence the Appellant for factual information he deems
offensive. He is trying to gain an advantage in court by attempting to get the
court to rule in a manner prejudicial to the Appellant. If he wants to be impartial
and unbiased, he might as well also file a Motion to Strike against his own

pleadings, including his Request for Attorney's Fees, which are full of hostile, mean-spirited, accusatory statements written by him against the Appellant. Not unsurprisingly, Appellee Moon did not file a Motion to Strike against his own pleadings, because he is not concerned with fairness before this court. "A lawyer must always remember he is an officer of the court. He may zealously represent himself but only within the bounds of 28 USC §1927, Fed. R. Civ. P 11...We emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired" (*Blair v Shenandoah Women's Center, Inc. 757 F. 2d 1435 Court of Appeals, Fourth Circuit, 1985*).

## C. APPELLEE MOON INTERCHANGEABLY ADDRESSES THE APPELLANT'S REPLY BRIEF AND HER RESPONSE TO MOTION FOR ATTORNEY'S FEES

Throughout his Motion to Strike, Appellee Moon interchangeably addresses the Motion both to her Reply Brief and her Response to his Motion for Attorney's Fees. In the title it says "Reply to Motion for Attorney's Fees" but in paragraph 2 and 3 Appellee Moon addresses her "Reply Brief". Appellant has focused on her response to his Motion for Attorney's Fees because that is what the Motion to Strike is titled as. Also, the specific allegations in Paragraph 1 and Paragraph 4 match statements in her response to his Motion for Attorney's Fees. Appellant is uncertain if this mixing up of what exactly he is trying to strike is intentionally deceitful in order to put the Appellant at a disadvantage for defending herself.

## CONCLUSION

The Appellee Moon's Motion to Strike is confused about what exactly he is asking this court to strike. In some places he asks the court to strike her Reply Brief, but in other places, like the title, he is asking the court to strike her response to his Motion for Attorney's fees. The exact statements he points to are ones that appear in the Appellant's response to his Motion for Attorney's Fees, which is a separate document than her Reply Brief. But whether or not it is the Appellant's response to his Motion for Attorney's Fees *or* her Reply Brief that he seeks to strike, he has failed to demonstrate that anything the Appellant has stated falls under the legal definition of "scandalous", as defined by the Fourth Circuit legal standards.

The Appellant has not stated anything that would fall under the accepted legal definition of "scandalous", as defined by Fourth Circuit case law. The Appellant's factual statements and legal arguments in her response to Appellee's Motion for Attorney Fees do not fall under the legal definition of "scandalous" as defined by the Fourth Circuit. Appellant Scott has adequately developed every single one of her legal arguments with facts to support each argument. Her response was a well ordered, logical flowing piece, and has adequately outlined the correlation between legal arguments, legal conclusions, case law, federal rules and supporting facts.

Appellee Moon's Motion to Strike is just another in the long history of false accusations he has hurled at the Appellant since 2017. From his website to his legal pleadings, Appellee Moon has been on a crusade to attack the Appellant with Defamation any way he can. His Motion to Strike is unnecessarily accusatory and tries to "call a foul" where there is none. Appellee Moon, by

counsel, has a history of making "objection" motions, multiplying paperwork unnecessarily, instead of just letting the facts speak for themselves. Appellee Moon, by counsel, claims that "this Court cannot tolerate the type of behavior the Plaintiff has put on display in her Reply brief". (Although he means the Appellant's response to his Motion for Attorney's fees, which appears in the title, not her Reply Brief). There is no "behavior" that Appellant Scott has done wrong.

What this court should not tolerate is Counsel Hardin's and Appellee Moon's making false statements in court pleadings. What this court should not tolerate is a litigant attempting to create a prejudicial atmosphere by demanding one form of courtesy from the opposing party while trying to create a double standard for himself. Appellee Moon, by counsel, has not shied away from writing hostile, accusatory, defamatory and mean-spirited statements against the Appellant. Nearly all of his pleadings contain large exaggerations which are accusatory. His motion to strike has been filed with the improper motive of suppressing evidence, it has nothing to do with him preserving the dignity of the court process. If he cared so much about the dignity of the court process, he would have been more of a gentleman in his own pleadings and not even lied once. But the reality is his motive is to suppress evidence and facts, it has nothing to do with him desiring to protect the integrity of the court process.

USCA4 Appeal: 21-2006     Doc: 29     Filed: 11/29/2021     Pg: 20 of 24

**WHEREFORE**, in consideration of the facts, case law, and rules stated herein, this court should DENY Appellee Moon's Motion to Strike - whether it be aimed at the Appellant's Reply Brief or Appellant's Response to Motion for Attorney's Fees, which are two separate documents he names in his Motion to Strike.


I ASK FOR THIS,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87
(VA ACP address (Va Code 2.2-515.2))
Richmond, VA 23218
540-692-2342
mscottw@gmu.edu

CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this REPLY TO MOTION TO STRIKE to Counsel for the

Appellee, Matthew D. Hardin, VSB #87482, 1725 I Street NW, Suite 300, Washington, D.C.,

20006, and at matthewdhardin@gmail.com on this ___24th____ day of NOV., 2021.

SIGNED,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87 (VA ACP address)
Richmond, VA 23218
540-692-2342
mscottw@gmu.edu

CERTI

7018 1130 0

**FROM:**

Melinda Scott
PO BOX 1133
Richmond VA 23218

**TO:**

Clerk,
Lewis
1100 E
Rich

**Utility Mailer**
**10 1/2" x 16"**







1000    23219

U.S. POSTAGE PAID
FCM LG ENV
GATE CITY, VA
24251
NOV 24 21
AMOUNT

**$5.91**

R2305K140577-04

ourth Circuit Court of Appeals
. Powell Jr. Courthouse & Annex
Main St., Ste. 501
ond, VA 23219

NOV 29 2021

ReadyPost.